Opinion issued April 11, 2002









 

 



In The

Court of Appeals

For The

First District of Texas






NO. 01-00-00579-CV

____________


EURIS CARMICHAEL, Appellant


 


V.



THE CITY OF HOUSTON AND THE STATE OF TEXAS


ACTING THROUGH THE TEXAS NATURAL 


RESOURCE CONSERVATION COMMISSION, Appellees






On Appeal from the 189th District Court


Harris County, Texas


Trial Court Cause No. 9845542






O P I N I O N


 A jury awarded the City of Houston and the Texas Natural Resource
Conservation Commission (TNRCC) more than $80,000,000 and a permanent
injunction against San Jacinto Paint Manufacturing Company, Gulf States Paint
Company, Tricon Industries, and Euris Carmichael. (1) In seven points of error, Euris
Carmichael argues the evidence was legally and factually insufficient and the trial
court erred when it granted directed verdicts relating to Fire Code violations and the
duration on the violations. We affirm.

Background


 On May 11, 1994, Carmichael wrote a letter to the TNRCC notifying it that he
was the new owner and chief executive officer of Gulf States Paint. In the letter, he
acknowledged responsibility for complying with an agreed order between the Texas
Water Commission and Gulf States Paint dated September 15, 1993. The agreed
order found that Gulf States had improperly stored hazardous waste at the facility
without a permit and it had allowed release of hazardous waste. The agreed order
required Gulf States to do the following:

 (1) immediately cease all discharges of industrial solid waste;

 (2) manage all waste materials in such a manner so as to comply with
various state laws and regulations;

 (3) inventory all wastes and products stored on-site;

 (4) submit documentation for all containers which have been shipped
off-site for storage or disposal; and 

 (5) submit, for approval, a plan to monitor the ground wells and soil to
determine whether there has been contamination from the
hazardous waste, and if so, to present a plan to clean up the site.


 Gulf States Paint filed for Chapter 7 bankruptcy. Carmichael, as president of
San Jacinto Paint, entered into an agreement with the bankruptcy trustee in which San
Jacinto Paint agreed: 

 to accept full responsibility for proper disposal of all inventory of [Gulf
States Paint], and [] fully comply with all applicable laws, rules and
regulations promulgated by all federal and state authorities regarding
disposal of hazardous waste, and [] fully comply with any and all prior
orders of the TNRCC with regard to disposition and disposal of [Gulf
States's] inventory. 


 Carmichael, who was representing himself, San Jacinto Paint, Gulf States Paint,
and Tricon Industries pro se at trial, testified that some of the hazardous waste present
at the site had been there since he purchased the company and the property in 1994. 
He also testified he did not have permission from the TNRCC to store hazardous
waste at the site. Carmichael called no other witnesses. The trial court directed
verdict on numerous issues including the duration of the alleged violations - 804 days
of Houston Fire Code violations and 1919 days of Texas Water Code violations. 
Additionally, the trial court granted a directed verdict that one of the buildings at the
San Jacinto Facility had inadequate ventilation. 

 The jury found (1) the conditions in the three buildings and the trailer all
presented physical and health hazards; (2) the facility had released contaminates into
the environment and combustible waste was located at the site; (3) no complete
Hazardous Materials Inventory Statement for the facility had been provided, and it
awarded a civil fine of $300 a day for the violation. The jury also found no
Hazardous Materials Management Plan had been provided to the Houston Fire
Department, and it awarded a civil fine of $300 a day for the violation. In addition,
the jury awarded (1) a $750 a day fine for storing hazardous materials above the
exempt amount; (2) a $200 a day fine for operating without adequate ventilation in
Building One; (3) a $500 a day fine for operating without a sprinkler system; (4) a
$1000 a day fine for operating without properly marking containers by identifying the
material inside; (5) a $1000 a day fine for failing to provide spill control; (6) a $950
a day fine for failing to provide secondary containment; (7) a $20,000 a day fine for
permitting the storage of industrial solid wastes without a permit from the TNRCC
prior to September 1, 1997; and (8) a $20,000 a day fine for permitting the storage of
industrial solid wastes without a permit from the TNRCC on or after September 1,
1997. The jury further found San Jacinto Paint caused, suffered, allowed or permitted
the collection, handling, storage, processing, or disposal of industrial solid waste in
such a manner as to cause the discharge or imminent threat of discharge of industrial
solid waste into or adjacent to waters in the state, the creation and maintenance of a
nuisance, or the endangerment of the public health and welfare, and it awarded fines
of $20,000 a day before September 1, 1997 and $20,000 a day on or after September
1, 1997. All told, the civil penalty exceeded $80,000,000, and the trial court issued
a permanent injunction enjoining the defendants from conducting any business at the
San Jacinto Paint facility.

 Sufficiency of the Evidence


 In issues one, three, five, and six, Carmichael complains the evidence is legally
and factually insufficient to support the various directed verdicts and specific jury
issues.

 There are five ways to preserve a challenge to the legal sufficiency of evidence: 
(1) a motion for instructed verdict; (2) an objection to the submission of a jury
question; (3) a motion for judgment notwithstanding the verdict; (4) motion to
disregard jury's answer to vital fact issue; or (5) a motion for new trial. T. O. Stanley
Boot Co. v. Bank of El Paso, 847 S.W.2d 218, 220 (Tex. 1992). 

 Carmichael was pro se at trial, but a lawyer filed a motion for new trial on his
behalf. He did not avail himself of any of the first four alternatives for preserving
error. In his motion for new trial, Carmichael complained that (1) plaintiffs' exhibits
were inconclusive in establishing the allegations against him, (2) the accuracy of the
tests performed to establish his wrongdoing was questionable, (3) substances
identified as contaminants were not remotely linked to his activities, (4) substances
identified as contaminants predated his activities on the site, and (5) his rights to
equal protection and due process were violated by filing of complaints against him
in the "twelfth hour." In a case in which a motion for new trial is required, a ground
of error not distinctly raised in a motion for new trial is waived. Gulf Coast State
Bank v. Emenhiser, 562 S.W.2d 449, 452 (Tex. 1978). 

 On appeal, Carmichael contends:

 issue one -- the trial court erred in awarding attorneys' fees;


 issue three -- there is no evidence or insufficient evidence he failed to
submit a hazardous material management plan and hazardous
material inventory statement;

 

 issue five -- there is no evidence or insufficient evidence establishing
a causal connection to the San Jacinto Paint Facility versus
emissions that have been previously fined; (2) and


 issue six -- there is no evidence or insufficient evidence to support the
position that San Jacinto Paint caused the discharge or imminent
threat of discharge or imminent threat of discharge [sic] of
industrial solid waste into or adjacent to waters of the state; the
creation and maintenance of a nuisance or the endangerment of
the public health and welfare. 

The points raised in the motion for new trial do not conform with the points raised on
appeal. Carmichael has not preserved his legal sufficiency challenges.

 In order to present a challenge to the factual sufficiency of the evidence on
appeal, it must be preserved in the trial court by pursuing a motion for new trial. Tex.
R. Civ. P. 324(b)(2), (3); Cecil v. Smith, 804 S.W.2d 509, 510 (Tex. 1991).
Carmichael's motion did not raise sufficiency arguments conforming to those raised
on appeal. Therefore, issues one, three, five, and six are waived because nothing is
preserved for review.

 We overrule Carmichael's issues one, three, five, and six.

Excessive Damages


 In issue seven, Carmichael argues the damages rendered were "wholly
disproportionate" to the severity of the alleged offense.

 In ordering a remittitur of excessive damages, we must examine all of the
evidence in the record to determine whether sufficient evidence supports the damage
award, remitting only if some portion is so factually insufficient or so against the
great weight and preponderance of the evidence as to be manifestly unjust. Pope v.
Moore, 711 S.W.2d 622, 624 (Tex. 1986).

 By failing to raise the issue in a motion for new trial, Carmichael has waived
this sufficiency challenge. See Tex. R. Civ. P. 324(b)(4); Cecil, 804 S.W.2d at 510. 
We overrule issue seven.

Directed Verdict


 In issue two, Carmichael argues the trial court erred when it granted a directed
verdict and failed to allow the jury to determine the number of days of any of the
violations. In issue four, Carmichael contends the trial court erred when it granted
a directed verdict on the ventilation issue because the jury should have been allowed
to make any such determination.

 A directed verdict is proper when (1) a defect in the opponent's pleadings
makes them insufficient to support a judgment, (2) the evidence conclusively proves
a fact that establishes a party's right to judgment as a matter of law, or (3) the
evidence is legally insufficient to raise an issue of fact. CDB Software, Inc. v. Kroll,
992 S.W.2d 31, 39 (Tex. App.--Houston [1st Dist.] 1998, pet. denied). 

 In reviewing the granting of a directed verdict, we must determine whether
there is any evidence of probative force to raise a fact issue on the material questions
presented. Szczepanik v. First S. Trust Co., 883 S.W.2d 648, 649 (Tex. 1994);
Metzger v. Sebek, 892 S.W.2d 20, 41 (Tex. App.--Houston [1st Dist.] 1994, writ
denied). We consider all the evidence in a light most favorable to the party against
whom the verdict was directed and disregard all contrary evidence and inferences. 
Szczepanik, 883 S.W.2d at 649; Metzger, 892 S.W.2d at 40. The trial court should
not weigh the credibility of the witnesses in determining whether to grant a directed
verdict. Prather v. Brandt, 981 S.W.2d 801, 805 (Tex. App.--Houston [1st Dist.]
1998, pet. denied).

Calculation of Days

 The trial court directed a verdict that San Jacinto Paint was not in compliance
with the Houston Fire Code from May 31, 1997 through August 12, 1999 (the date
of the start of the trial) for a total of 804 days. The trial court also granted a directed
verdict that San Jacinto Paint violated the permitting requirements of the TNRCC and
the Texas Water Code from May 11, 1994 to the day the trial began, resulting in 1919
days of violation.

 Carmichael contends the jury should have been given the opportunity to
determine the number of days of noncompliance.

 Fire Code Violations (May 31, 1997 to trial date)

 Brian Mangham, an inspector in the Fire Marshall's office of the Houston Fire
Department, testified that, on January 29, 1997, he issued San Jacinto Paint notice of
violations of the Houston Fire Code. He testified Carmichael was given until May
30, 1997 to comply with the Fire Code. Mangham returned to the site on five
different occasions from January 1997 to the time of trial, and he testified the
property remained in violation of the same Fire Code provisions. 

 Carmichael's cross-examination of Mangham did not attempt to dispute the fact
that San Jacinto Paint was noncompliant. Quite the contrary. During Mangham's
cross-examination, Carmichael introduced several letters he had written to the
Houston Fire Department in which he confirmed San Jacinto Paint's noncompliance
during this period by outlining the efforts it was making to come into compliance. 
There is no time during Carmichael's testimony that he attempted to refute that San
Jacinto Paint was noncompliant during the time period in question.

 Water Code Violations (May 11, 1994 to trial date)

 On May 11, 1994, Carmichael wrote a letter to the TNRCC notifying it that he
was the new owner and chief executive officer of Gulf States Paint. In the letter, he
acknowledged responsibility for complying with an agreed order between the Texas
Water Commission and Gulf States Paint dated September 15, 1993. It is undisputed
the order required compliance with state law on the site. Carmichael did not deny he
took possession of and responsibility for the hazardous waste at the facility on May
14, 1994 - the day he wrote to the TNRCC. Additionally, he presented no evidence
refuting the fact that San Jacinto Paint was still storing hazardous waste up until the
day of trial.

 We find no evidence, and Carmichael directs us to no evidence, indicating the
dates in question should be anything other than those found by the trial court in its 
directed verdict. The evidence presented by Carmichael was legally insufficient to
raise an issue of fact. See Kroll, 992 S.W.2d at 39. As such, the trial court did not
err when it granted a directed verdict on the calculation of days Carmichael was in
violation of the Fire Code and the Texas Water Code.

 We overrule issue two.

Ventilation

 Section 8003.1.8.2 of the 1994 Uniform Fire Code requires ventilation no more
than 12 inches off the ground. During the charge conference, the appellees sought
a directed verdict that the ventilation at San Jacinto Paint did not meet the statutory
requirements. When it granted the directed verdict, the trial court explained to
Carmichael that he 

 did not provide any controverting evidence that [he] did have an
improved ventilation system on one of the three buildings, so that's an
issue the Court can decide as a matter of law, that there was not
approved ventilation system in one of these buildings. 


To have directed verdict on this issue, the trial court had to have found two things:
(1) the ventilation system at the San Jacinto facility was in violation of the Houston
Fire Code, and (2) the ventilation system in Building One was not approved by the
Houston Fire Marshall's office. 

 Carmichael testified that the ventilation system in Building One consisted of
a large fan located more than 12 inches off the floor. He testified the City of Houston
Fire Marshal's office had not approved the mechanical ventilation system.

 Carmichael contends, however, that a letter from Mr. John Tenini of
Resochem (3) Corporation raises a fact question which should have required the
ventilation issue be submitted to the jury. Mr. Tenini's letter states that "the
ventilation provided by exhaust fans is sufficient to remove solvent vapors meeting
both environmental and safety requirements." Tenini's letter does not address
whether the fan met the requirements for an approved ventilation system as set forth
in the Fire Code, and it does not offer any evidence that the Houston Fire Marshal's
office approved the ventilation system.

 The evidence presented by Carmichael was legally insufficient to raise an issue
of fact. See Kroll, 992 S.W.2d at 39. As such, the trial court did not err when it
granted a directed verdict on the ventilation issue.

 We overrule issue four.

 The judgment of the trial court is affirmed.


 Jackson B. Smith, Jr.

 Justice


Panel consists of Justices Cohen, Nuchia, and Smith. (4)


Do not publish. Tex. R. App. P. 47.
1. The trial court entered a directed verdict that Carmichael was the owner of San
Jacinto Paint, Gulf States, and Tricon and the operator of the San Jacinto
Facility. San Jacinto Paint, Gulf States, and Tricon's corporate charters were
forfeited; therefore, Carmichael was jointly and severally liable for them for all
civil penalties, costs, and attorneys' fees assessed against them.
2. His briefing is actually objecting to the phrasing of the jury question and that
the evidence was insufficient to establish a time frame.
3. The record is silent at to what Resochem does or who Tenini is.
4. The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First
District of Texas at Houston, participating by assignment.